IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM MONROE CROUSE, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV269 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff William Monroe Crouse, Jr. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on July 31, 2014, alleging a disability onset date of May 1, 2011. (Tr. at 15, 187-195.)[2] His application was denied initially (Tr. at 102-105) and upon reconsideration (Tr. at 111-115). Thereafter, Plaintiff requested an

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 116-118.) Plaintiff, along with his attorney and an impartial vocational expert ("VE"), attended the subsequent hearing on January 9, 2017. (Tr. at 30.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act since July 31, 2014, the date the application was filed.[3] (Tr. at 25.) On February 6, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

---

[3] The ruling could not extend to earlier than the application date because SSI is not payable prior to the month following the month in which the application was filed, irrespective of the claimant's alleged onset date. See 20 C.F.R. § 416.335.

2

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity since July 31, 2014, the application date." (Tr. at 17.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "Asthma, Borderline Intellectual Functioning vs. Lower Intelligence; Renal Insufficiency, and Depression." (Id.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Id.) Plaintiff does not challenge this listing determination at step three. The ALJ then assessed Plaintiff's RFC and determined that he could perform unskilled light work, with the following additional limitations:

> stand and walk for 2 hours at a time and for a total of 6 hours in an 8-hour workday; he can sit for 30 minutes at a time and for a total of 4 hours in an 8-hour workday; and he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can occasional[ly] reach in all directions, handle, finger, and feel frequently, but not continuously, with his right dominant upper extremity. Mentally, the claimant is limited to simple, routine, repetitive tasks, with only occasional contact with co-workers, supervisors, and the public.

(Tr. at 19.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff had no past relevant work. (Tr. at 24.) The ALJ also determined at step five

5

that, given Plaintiff's age, education, work experience, RFC, and the testimony of the VE as to these factors, he could perform other jobs available in the national economy. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now argues that the ALJ erred in three respects. First, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff contends that "[t]he ALJ's failure to properly account for [his] moderate limitations in concentration, persistence, and pace in his RFC is error[.]" (Pl.'s Br. [Doc. #11] at 5.) Second, Plaintiff contends that "the ALJ's reliance on the VE's testimony is in error" based on an unresolved conflict with the Dictionary of Occupational Titles ("DOT"). (Id. at 10.) Third, Plaintiff contends that "the ALJ's appointment did not comply with the Appointments Clause." (Id. at 19.) For the reasons set out below, the Court concludes that remand is required with regard to Plaintiff's second contention, and the Court therefore need not reach the remaining contentions.

### A. DOT Conflict

In pertinent part, Plaintiff challenges the ALJ's reliance on the VE's testimony at step five of the sequential analysis. As explained below, this argument has merit.

In Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015), a VE testified that a claimant was capable of performing three occupations. For each of the three occupations, the Dictionary of Occupational Titles listed frequent reaching as a requirement. Id. However, based on VE testimony, the ALJ found that the claimant's non-dominant arm could only occasionally reach upward. Id. Based on the DOT's broad definition of reaching (i.e., "[e]xtending hand(s) and arm(s) in any direction") the Fourth Circuit held that the occupations identified by the expert may require frequent bilateral overhead reaching. Id. at 210-211.

Because of the apparent conflict between the VE's testimony and the DOT, the ALJ was required to elicit a reasonable "explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching," before relying on the expert's testimony. Id. at 211. The Fourth Circuit also clarified that if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Id. at 209-11; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

Here, the VE identified the jobs of Sorter, Mail Sorter (non-postal), and Linen Grader as jobs a hypothetical claimant with the same RFC as Plaintiff could perform.[5] (Tr. at 24, 64-65.) After identifying these three jobs, the ALJ and the VE had the following exchange:

> Q: Has all of your testimony today been consistent with your training, education, and experience?
>
> A: It has, Your Honor, with somewhat outside the DOT and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left.
>
> Q: Okay.
>
> A: And that is consistent with my 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry.

(Tr. at 66.)

---

[5] The title in the DOT of the Sorter position identified by the VE (Tr. 65) is that of "Picking-Table Worker," 1991 WL 674230. The title in the DOT of the Mail Sorter position identified by the VE (Tr. at 65) is "Mail Clerk," 1991 WL 671813. The title in the DOT of the Linen Grader position identified by the VE (Tr. at 65) is also that of "Linen Grader," 1991 WL 672993. The ALJ called these positions, respectively, "Sorter," "Mail Sorter (Non-Postal)," and "Linen Folder." (Tr. at 24.)

Plaintiff correctly points out that all three jobs mentioned above require <u>frequent</u> reaching according to the DOT. (Pl.'s Br. at 11-15 referencing Picking-Table Worker, 521.687-102, 1991 WL 674230 ("Reaching: Frequently - Exists from 1/3 to 2/3 of the time"), Mail Clerk, 209.687-026, 1991 WL 671813 (same), and Linen Grader, 361.687-022, 1991 WL 672993 (same).) He then contends that this limitation is in apparent conflict with his limitation to only <u>occasional</u> reaching with his dominant arm. (Pl.'s Br. at 11-15.) Plaintiff then contends further that the purported explanation for this apparent conflict fails to provide a reasonable explanation and basis for relying on the VE's testimony. (Pl.'s Br. at 11, 18-19.)

The Court agrees that there was an apparent conflict between the DOT and the VE's testimony. The DOT provides that the jobs in question all require frequent (meaning up to two-thirds of a workday) reaching, while the VE testified that a claimant limited in the use of his dominant arm to <u>occasional</u> (meaning no more than one-third of a workday) reaching can perform the listed jobs. See <u>Pearson v. Colvin</u>, 810 F.3d at 211 ("Although the [DOT] does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, [its] broad definition of 'reaching' means that they certainly <u>may</u> require such reaching."); <u>Lamear v. Berryhill</u>, 865 F.3d 1201, 1206 (9th Cir. 2017) (rejecting argument that the fact that the DOT does not expressly require bilateral reaching in a job description implies that only unilateral reaching is required, stating "we cannot determine from this record, the DOT, or our common experience whether the jobs in question require both hands"); SSR 83-10, 1983 WL 31251, at *5-6 (defining "[o]ccasionally" as up to one-third of a workday and "frequent" as up to two-thirds of a workday). Consequently, for the ALJ's step five analysis to be supported by substantial evidence, the ALJ, by way of the VE, had to identify the

8

apparent conflict and provide a reasonable explanation that is susceptible to judicial review as to why the ALJ could rely upon VE testimony rather than the DOT.

None of these requirements were met here. First, as a threshold matter, the Court notes that the VE did not identify the <u>specific</u> conflict in question. Instead, when queried, the VE stated that her testimony was "somewhat outside the DOT and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left." (Tr. at 66.) It is far from clear what this means. While the quoted testimony appears to be an effort on the part of the VE to identify some <u>general</u> conflict between her testimony and the DOT regarding reaching, such a statement is simply too vague and ambiguous to fairly constitute an identification of the <u>specific</u> apparent conflict raised by Plaintiff here. As a result, the Court cannot determine if the ALJ's step five finding is supported by substantial evidence.

Nor was the VE's explanation for the unidentified reaching conflict susceptible to judicial review. As noted, the VE apparently tried to reconcile the fact that her testimony was "somewhat outside the DOT" as to the "breakdown of reaching right versus left," by stating that it was "consistent with [her] 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry." (Tr. at 66.) Again, however, it is far from clear what all of this means. There is no "breakdown" regarding "reaching right versus left" in the VE's testimony or in the ALJ's decision. While a VE may resort to personal experience to explain why her opinion remains reliable despite an apparent conflict with the DOT, <u>see, e.g.</u>, <u>Allen v. Berryhill</u>, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018) (Auld, M.J.),

9

adopted Slip Op. (M.D.N.C. May 23, 2018) (Biggs, J.), that explanation must itself be stated clearly enough to be susceptible to judicial review. [6]

Moreover, the ALJ did not provide any analysis to help explain how this testimony was interpreted and relied upon. In this regard, Pearson requires the ALJ to determine both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson v. Colvin, 810 F.3d at 211. Here, the ALJ did not address the DOT conflict at all, and instead found that "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT)." (Tr. at 24.) Thus, the ALJ did not resolve the ambiguity in the VE's testimony, or otherwise identify the conflict and determine that there was a reasonable basis for relying on the VE's testimony rather than the DOT.[7]

Thus, the Court concludes that there is simply insufficient analysis and explanation to reasonably allow for judicial review, either in the VE's identification of the apparent conflict,

---

[6] This case, therefore, stands in contrast to another case recently decided in this district, Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666. Allen involved an apparent conflict between (1) VE testimony that a claimant could not reach overhead with her left, non-dominant upper extremity and (2) DOT job descriptions involving jobs requiring either frequent or occasional reaching. See Allen, 2018 WL 2025666, at *6. The VE in Allen, however, unlike the VE in this case, "expressly acknowledged that the DOT neither differentiated between unilateral and bilateral reaching, nor specifically addressed the direction of reaching involved" and then properly "relied on his own professional experience to opine that an individual who could not reach overhead with the left, non-dominant arm could still perform all three of the jobs in question." Id. at 6. That analysis was not included in the present case, either by the ALJ or the VE.

[7] This failure is further compounded by the fact that the ALJ did not provide any analysis regarding how or why he included the chosen limitations for reaching, handling, and fingering. In this regard, the ALJ concluded that as a result of his impairments, Plaintiff had difficulties with prolonged standing, walking and sitting, and the ALJ included related limits on those activities. (Tr. at 22.) The ALJ also found that Plaintiff "should be able to lift and carry light objects." (Tr. at 22.) However, the ALJ did not include any analysis regarding Plaintiff's limitations on reaching, handling, and fingering. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (holding that an ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion.").

in the VE's explanation for why that apparent conflict could be disregarded, or in the ALJ's own analysis set out in the decision. Remand is therefore in order.

The Court also notes that, given the jobs identified by the VE, the failure to sufficiently address the issue is not harmless. In this regard, the Court notes that the Sorter job identified by the VE (Tr. at 65) requires that the worker "Picks stems, stones, metal, or wood not eliminated by trash-picking machine from conveyor to prevent damage to beet knives. May trim tops from beets to prevent clogging of knives in slicers." Picking-Table Worker, 521.687-102, 1991 WL 674230. The DOT description of Linen Grader indicates that a worker in this job "[g]rades laundered towels and similar linens according to quality, condition, and kind of item. Ties them into bundles of specified size or number of articles and records contents of each bundle. Stores bundles in bins for delivery to customers of linen-rental service." Linen Grader, 361.687-022, 1991 WL 672993. Absent a meaningful explanation by the VE, it is difficult to imagine how a worker could perform these tasks if limited to occasional reaching with his dominant upper extremity, meaning reaching no more than one-third of an eight hour workday. See e.g., Lawson v. Berryhill, No. CV TJS-17-0486, 2018 WL 1135641, at *3 (D. Md. Mar. 1, 2018) ("It is difficult to imagine how a person [limited to occasional use of the non-dominant hand] could hang drapes or move furniture on a full-time basis relying almost solely on the use of his nondominant arm and hand. It may be that the housekeeper occupation does not usually require persons to complete these tasks, and the VE could have explained this to the ALJ. But the ALJ made no such inquiry and the VE gave no such explanation. The same goes for the occupations of packer and marker, both of which require at least frequent reaching and handling."). The VE in this case testified that her testimony was "somewhat

11

outside the DOT" as to the "breakdown of reaching right versus left," by stating that it was "consistent with [her] 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry." This is not sufficient information for the ALJ to conclude that there is a reasonable explanation for the conflict between the VE's testimony and the DOT.[8]

The remaining position of mail sorter is equally problematic. First, like the previous two jobs addressed above, the DOT job description for mail sorter seems—absent a meaningful explanation—facially at odds with the performance of frequent reaching.[9] Second,

---

[8] The Court notes that the analysis was further confused when the VE initially identified the occupation as "Folder," but then switched to "Linen Grader," and the ALJ later combined the occupations by referring to the Linen Grader position as "Linen Folder." (Tr. At 65, 24.) While Linen Folder is not an actual occupation provided by the DOT, "Folder" is a position under the Laundry, Cleaning, Dyeing and Pressing Industry umbrella of the DOT. The Folder position also lists frequent reaching as a requirement. The DOT described the Folder position as follows:
> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder

369.687-018, 1991 WL 673072.

[9] The DOT described this position as follows:

> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical).

209.687-026, 1991 WL 671813.

as Plaintiff correctly points out (Pl.'s Br. at 14-15), according to the DOT, the mail sorter position also requires a Reasoning Level of 3, 209.687-026, 1991 WL 671813, and Plaintiff was limited to the performance of simple, routine, and repetitive tasks (Tr. at 19). Judges in this District have repeatedly held that this too is an apparent conflict that the VE must address. See, e.g., Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (Osteen, C.J.) (finding an apparent conflict between an RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment and a VE's testimony that Plaintiff could perform a job to which the DOT assigned a Reasoning Level of 3). And, although no party mentions this, the Fourth Circuit recently held that there is an apparent conflict "between a limitation to short and simple instructions and Reasoning Development Level 3 occupations." Keller v. Berryhill, 2018 WL 6264813, at *4 (4th Cir. Nov. 29, 2018).

Here, neither the VE nor the ALJ identified or reconciled this apparent conflict. And, in fact, a review of the transcript of the administrative hearing reveals an even more fundamental problem: none of the hypothetical questions the ALJ put to the VE included Plaintiff's limitation to performing no more than simple, routine, and repetitive tasks. (Tr. at 64-66.) This omission also requires remand because the VE never considered whether a claimant limited to simple, routine, repetitive tasks could perform the three jobs in question. See Walker v. Bowen, 889 F.2d 47, 50–51 (4th Cir.1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.") (citations omitted); see also McGlothlin v. Berryhill, No.

1:17CV998, 2018 WL 6111786, at *5 (M.D.N.C. Nov. 21, 2018) ("[T]his Court has specifically held that simple, routine work is not synonymous with unskilled work." (collecting cases)).

The Commissioner's arguments to the contrary are not persuasive. First, the Commissioner does not agree that the conflict identified and discussed herein is an apparent conflict, but instead describes it as a "gap in the DOT's evidence," based on the fact that the DOT does not address whether a given job can be performed bilaterally or unilaterally. (Def.'s Br. at 9.) However, this is the same contention that was considered and rejected by the Fourth Circuit in Pearson. Specifically, in Pearson, the RFC included a limitation to "occasional overhead lifting/reaching using the nondominant upper extremity," but the three occupations identified by the vocational expert at step five all reflected "frequent reaching" in the DOT. Pearson, 810 F.3d at 206. In Pearson, as in the present case, the Commissioner argued that there was no apparent conflict between the general reaching restrictions in the DOT and the narrow restrictions found by the ALJ. However, the Fourth Circuit concluded that this was exactly the type of apparent conflict that required further explanation and resolution by the ALJ. Likewise, this Court concludes that there is an apparent conflict here that the VE and the ALJ were obliged to identify and resolve. See also Boston v. Colvin, No. 4:14-CV-206-D, 2016 WL 721563, at *8 (E.D.N.C. Feb. 2, 2016) (collecting cases holding that "the VE's proposal of a job that requires a frequency of reaching that a claimant cannot perform with one of his arms creates a conflict with the DOT that the ALJ is required to resolve").

Second, referencing the quoted dialogue between the VE and the ALJ set forth above, the Commissioner contends that, "the ALJ and the VE identified the reaching issue that existed in this situation." (Def.'s Br. [Doc. #13] at 8.) However, as explained, although the

14

VE mentioned a conflict related to reaching, she never explained the specific details of this conflict. The ALJ also failed to interpret the testimony or resolve the conflict. Thus, the Court is left to speculate as to precisely what the VE meant in her ambiguous remarks about the "breakdown" in "reaching left versus right," which is not sufficient or appropriate on judicial review.

Third, the Commissioner contends further that "[b]y characterizing [the VE's] testimony as 'outside the DOT,' the VE essentially highlighted the fact that the DOT does not address whether its reaching requirements apply bilaterally or unilaterally." (Def.'s Br. at 9.) The Commissioner reasons further that "[t]he VE confirmed that, despite being limited to occasional reaching with his right arm, Plaintiff could still perform the three jobs identified – i.e., Plaintiff could use his left arm to perform the frequent reaching cited in the DOT. (Tr. at 66.) The VE explained that her conclusion was based on her 25 years of experience, including talking with employers and being in the industry (Tr. 66)." (Def.'s Br. at 9.)

The Court does not find this argument persuasive. Nowhere in her testimony did the VE state that Plaintiff "could use his left arm to perform the frequent reaching cited in the DOT" and required by the three jobs the ALJ concluded Plaintiff could perform. Instead, what the VE said was that her testimony was "somewhat outside the DOT" with regards to the "breakdown of reaching right versus left." (Tr. at 66.) Again, the Court concludes that it would be unduly speculative to infer the former from the latter. And, in fact, the Fourth Circuit has cautioned against performing such guesswork. See Pearson, 619 F.3d at 211 (concluding that "[a]lthough we could guess what these occupations require in reality, it is the purview of

15

the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching.").

In summary, it is clear that the VE in this case never meaningfully identified the conflict at issue here, and there is no testimony or discussion that is susceptible to judicial review explaining how the conflict was resolved. As discussed above, the Fourth Circuit clarified in Pearson that the VE's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. That analysis was not adequately performed here. Accordingly, this matter requires remand based on the analysis set out in Pearson.

None of this necessarily means that Plaintiff is disabled under the Act and the Court expresses no opinion on that matter. Nevertheless, the Court concludes that the proper course here is to remand this matter for further administrative proceedings. To the extent Plaintiff raises any other issues in his motion, the Court declines consideration of any such issues at this time. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision is of no preclusive effect, as it is vacated and the new hearing is conducted).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. # 12] should be DENIED, and

Plaintiff's Motion for Summary Judgment [Doc. # 10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 26th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge